Receipt number AUSFCC-6372600

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ANDREW THOMAS, individually and on behalf )
of all others similarly situated, )
           )
           )
        Plaintiff, )
           )    Case No.  <u>20-1009 C</u>
        v. )
           )
THE UNITED STATES, )
           )
        Defendant. )

## CLASS ACTION COMPLAINT

Plaintiff Andrew Thomas, on behalf of himself and all others similarly situated, brings

this class action against Defendant the United States ("Government") and alleges as follows upon

personal knowledge as to himself and his own acts and experiences, and, as to all other matters,

upon information and belief, including investigation conducted by his attorneys:

### NATURE OF THE CASE

1.     This class action is brought on behalf of all wage employees of the Army and Air

Force Exchange Service ("AAFES" or "The Exchange") who, at any time after August 13, 2014,

were eligible to receive Premium Pay (including Sunday Pay, Holiday Pay, and Shift Differential

Pay) and were not paid all of the Premium Pay that they were entitled to receive.

2.     The payment of Premium Pay is mandated by federal statute and/or regulations

which require that eligible employees be paid additional compensation for hours worked on

particular days of the week (Sunday and/or Holiday hours) and for hours worked and/or hours

absent on leave with pay that are assigned to a particular work shift (Night Shift hours).

3.     Pursuant to said statute and/or regulations, the Government, in fact, often paid

Premium Pay to Plaintiff and the Classes (thereby acknowledging their eligibility for it), but due

to systemic problems with its payroll system, the Government systematically failed to correctly calculate and pay all of the Premium Pay amounts due to Plaintiff and the Classes.

4.      Plaintiff and the Classes seek, among other things, damages, costs, and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1).  The Tucker Act provides, in relevant part, as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

6.      Plaintiff's and the Classes' claims against the Government are founded upon either, or both, a money mandating Act of Congress and/or executive department regulations, including 5 U.S.C. § 5343(f), 5 U.S.C. § 5544(a), 5 U.S.C. § 5546, and their implementing regulations, including 5 CFR § 532.505, 5 CFR § 532.507, 5 CFR § 532.509, Office of Personnel Management Operating Manual, "Federal Wage System" Nonappropriated Fund, Subchapter S8-4(b)-(e) ("FWSNF S8-4") and/or various executive department regulations, including Department of Defense Instruction ("DoDI")1400.25-V1405, Appendix 2 to Enclosure 3, ¶ 2(d)(1),(3)-(5) and Appendix 4 to Enclosure 3, ¶ 3, Army and Air Force Regulation AR 215–8/AFI 34–211(I) and Exchange Operating Procedure ("EOP"), 15-10, at 1-1 *et seq.*

7.      The aforementioned statutes and regulations constitute an express waiver of the sovereign immunity of the United States of America and can fairly be interpreted as mandating compensation by the Government for damages sustained and/or creating a substantive cause of action and/or right to recover money damages against the Government.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1491(a)(1).

## PARTIES

9.      Plaintiff Andrew Thomas is a citizen of Waco, Texas.  Mr. Thomas is a wage employee of the Government, having worked for the Army and Air Force Exchange Service (a/k/a "AAFES" or "The Exchange") on an hourly rate basis from August 21, 2017 through the present.  During his employment, Mr. Thomas has worked at the Waco Distribution Center in Waco, Texas (including EWADC M/S Inbound, M/S Outbound and N/S) as a Crafts & Trade "C&T" associate under the Hourly Pay Plan ("HPP"), holding job titles such as Materials Handler II and Materials Handler III.  He was hired as Temporary Full Time ("TFT") associate on August 1, 2017 and became a Regular Full Time ("RFT") associate on December 2, 2017.

10.     AAFES employees, like Plaintiff, are federal employees within the Department of Defense ("DoD").  *See* Army & Air Force Regulation, AR 215–8/AFI 34–211(I), 5-1(a).

11.     Defendant is the United States of America (the "Government"), a sovereign entity and body politic.  Defendant is responsible for the actions of its various agencies, including, for example, the Department of Defense ("DoD") and Nonappropriated Fund Instrumentalities ("NAFIs") within the DoD, such as AAFES.

12.     AAFES is a Joint NAFI of the Army and the Air Force under the jurisdiction of the Chief of Staff of the Army and the Chief of Staff of the Air Force.  *See* AR 215–8/AFI 34–211(I), 1-10. The Army and Air Force, and all offices, agencies, activities, and commands under their control or supervision, are part of the DoD.  *See* 10 U.S.C. § 111.  The DoD is an executive department.  *See* 5 U.S.C. § 101; see also 10 U.S.C. § 111.

13.     The DoD has vested in the Secretaries of the Army and Air Force all functions, powers, and duties relating to exchange activities within their respective military departments.

AR 215–8/AFI 34–211(I), 1-5.  The Secretaries of the Army and Air Force have authorized the "AAFES director and chief executive officer" to issue exchange operating procedures ("EOPs") and regulations to establish and fulfill AAFES policies, including personnel policies and practices which apply to all AAFES employees, and to manage AAFES activities and supervise AAFES personnel worldwide.  AR 215–8/AFI 34–211(I) at 1-10, 2-5 and 5-1.

14.     AAFES employees are required to be "advised of policies, programs, and procedures," including "pay and compensation practices" and "Employee benefits programs." *See* Army & Air Force Regulation, AR 215–8/AFI 34–211(I), 5-1(e).

15.     AAFES's purpose is to provide quality goods and services at competitively low prices to military personnel and generate funds for morale, welfare, and recreational activities. AAFES operates more than 4,000 retail, food, and service facilities at Army and Air Force installations throughout the world and has over 35,000 employees.

### FACTS

### Plaintiff and the Classes Are Entitled To Mandatory Payment Of Premium Pay

16.     Various federal laws mandate the payment of additional compensation, in the form of Premium Pay, to eligible employees of the Government who work hours on Holidays and/or Sundays (Holiday Premium Pay and Sunday Premium Pay) and/or who work or take paid leave of absence for hours for which they are assigned to the second or third night shift (Shift Differential Premium Pay).  *See, e.g.,* OPM Operating Manual, "Federal Wage System" Nonappropriated Fund, Subchapter S8-4 ("FWSNF S8-4") ("Pay authorized under this section must be paid whenever an employee performs work under the conditions and circumstances described."); DoDI 1400.25-V1405, Appendix 4 to Enclosure 3, Premium Pay ("Payment for night, Sunday, and holiday work must comply with sections 5343 and 5544 of Reference (f);

subparts 532.505, 532.507, and 532.509 of Reference (h); and Reference (g). Pay for Sunday work must also comply with paragraph 2d(5) of Appendix 2 to Enclosure 3."); EOP 15-10, at 13-67 ("Premium payments are payments made in addition to the associate's BHR of pay" and include Shift Differential… Sunday Premium Pay, Holiday Premium Pay….).

### **Holiday Premium Pay**

17.     For instance, 5 U.S.C. § 5546 provides, *inter alia*, that "(b) An employee who performs work on a holiday designated by Federal statute, Executive order … is entitled to pay at the rate of his basic pay, plus premium pay at a rate equal to the rate of his basic pay, for that holiday work which is not—(1) in excess of 8 hours; or (2) overtime work as defined by section 5542(a) of this title…"); *See also* 5 U.S.C. § 6128(d) ("Notwithstanding section 5546(b) of this title, an employee on a compressed schedule who performs work on a holiday designated by Federal statute or Executive order is entitled to pay at the rate of such employee's basic pay, plus premium pay at a rate equal to such basic pay rate, for such work which is not in excess of the basic work requirement of such employee for such day.").

18.     5 CFR § 532.507 provides, *inter alia*, that "(a) An employee who is entitled to holiday premium pay and who performs work on a holiday which is not overtime work shall be paid the employee's rate of basic pay plus premium pay at a rate equal to the rate of basic pay." *See also* 5 CFR § 550.131 ("employee who performs holiday work is entitled to pay at his or her rate of basic pay plus premium pay at a rate equal to his or her rate of basic pay for that holiday work…"); 5 CFR § 610.407(a) ("An employee on a compressed schedule who performs work on a holiday is entitled to basic pay, plus premium pay at a rate equal to basic pay, for the work that is not in excess of the employee's compressed work schedule for that day.").

19.     FWSNF S8-4(d), provides, *inter alia*, that "(2) An NAF wage employee who is

entitled to holiday premium pay and who performs work on a holiday is entitled to his or her rate of basic pay plus premium pay at a rate equal to his or her rate of basic pay for that holiday work which is not: (i) in excess of 8 hours or (ii) overtime work."

20.     DoDI 1400.25-V1405, Appendix 2 to Enclosure 3, ¶ 2(d)(4), which refers to the "pay entitlements" authorized by FWSNF S8-4.d.(2), provides, *inter alia*, that "Premium pay at a rate equal to the basic rate is paid for the number of non-overtime hours worked on the holiday. If the employee does not work on the holiday but instead is excused from work, the employee is simply paid the basic rate for the number of regularly scheduled hours normally worked."

21.     AAFES's Exchange Operating Procedure ("EOP") 15-10, at 13-81 provides, *inter alia*, that "Holiday premium pay is paid to all associates for the number of non-overtime regularly scheduled hours actually worked on the holiday when required to work. The rate of holiday premium pay is 100% of the associate's rate of basic pay, and is in addition to the basic pay for the holiday…".  EOP 15-10, at 4-131 further provides, *inter alia*, that:

    a.  All categories of associates get the holiday off, with pay, when the holiday falls on a day they're scheduled to work. Associates that are required to work on the holiday get Holiday Premium Pay for non-overtime hours actually worked on the holiday.

    b.  RFT/RPT associates get an alternate day off, with pay, if the holiday falls on a day they're not scheduled to work. RFT/RPT associates that are required to work on their alternate day off get Holiday Premium Pay for non-overtime hours actually worked on the alternate day. If an associate's scheduled workday includes hours that fall on two days, including the holiday, he/she gets the entire shift off, with pay; or if required to work, gets basic pay for all non-overtime hours worked plus Holiday Premium Pay for the non-overtime hours actually worked on the holiday."

## Sunday Premium Pay

22.     Similarly, 5 U.S.C. § 5544(a) provides, *inter alia*, that "An employee… whose regular work schedule includes an 8-hour period of service a part of which is on Sunday is

entitled to additional pay at the rate of 25 percent of his hourly rate of basic pay for each hour of work performed during that 8-hour period of service." *See also* 5 U.S.C. § 5546; 5 U.S.C. § 6128(c) ("Notwithstanding section 5544(a) or 5546(a) of this title… in the case of any full-time employee on a compressed schedule who performs work (other than overtime work) on a tour of duty for any workday a part of which is performed on a Sunday, such employee is entitled to pay for work performed during the entire tour of duty at the rate of such employee's basic pay, plus premium pay at a rate equal to 25 percent of such basic pay rate.").

23.     5 CFR § 532.509 provides, *inter alia*, that "A wage employee whose regular work schedule includes a period of service of up to 8 hours which is not overtime work, a part of which is on Sunday, is entitled to additional pay under the provisions of section 5544 of title 5, United States Code." *See* 5 CFR § 532.513 ("employees who are authorized to work flexible and compressed work schedules under sections 6122 and 6127 of title 5, United States Code, shall be paid premium pay in accordance with subchapter II of chapter 61 of title 5, United States Code").

24.     FWSNF S8-4(e), provides, *inter alia*, that "Under 5 U.S.C. 5544, an NAF wage employee whose regular work schedule includes an 8-hour period of service that is not overtime work, a part of which is on Sunday, is entitled to additional pay at the rate of 25 percent of his or her hourly rate of basic pay for each hour of work performed during that 8-hour period of service [See 46 Comp. Gen. 337 (1982)]. An NAF employee who works more than 8 hours in a single tour of duty on Sunday does not receive (unless under a compressed work schedule) the Sunday premium for hours in excess of 8 hours."

25.     DoDI 1400.25-V1405, Appendix 2 to Enclosure 3, ¶ 2(d)(5), which refers to the "Authorization of Pay for Sunday Work" and "entitlement" contained in FWSNF S8-4(e), provides, *inter alia*, that both full and part-time employees receive Sunday premium pay.

26.     EOP 15-10, at 13-87 provides, *inter alia*, that "All categories of C&T associates, regardless of whether they are RFT, RPT, INT, TFT, or TPT, are eligible for Sunday premium pay at the rate of 25% of their basic rate of pay for all hours worked in their assigned shift (up to a maximum of eight hours), provided they are regularly scheduled to work on a Sunday."). *See also* EOP 15-10, at 13-82 ("Sunday premium pay for PFP/PB associates is paid only to RFT/TFT categories scheduled to work a minimal of an eight-hour shift…. Sunday premium pay is only paid for actual hours worked (does not include Vacation Leave, Sick Leave, or LWOP hours)."

27.     EOP 15-10, at 13-84 provides that when an associate has two separate tours of duty that fall on the same Sunday, the associate is entitled to Sunday premium pay for both tours.

### Night Shift Differential Premium Pay

28.     5 U.S.C § 5343, provides that "A prevailing rate employee is entitled to pay at his scheduled rate plus a night differential— (1) amounting to 7 ½ percent of that scheduled rate for regularly scheduled nonovertime work a majority of the hours of which occur between 3 p.m. and midnight; and (2) amounting to 10 percent of that scheduled rate for regularly scheduled nonovertime work a majority of the hours of which occur between 11 p.m. and 8 a.m." *See also* 5 U.S.C § 5342 ("prevailing rate employee" includes individuals "employed in a recognized trade or craft, or other skilled mechanical craft, or in an unskilled, semiskilled, or skilled manual labor occupation, and any other individual, including a foreman and a supervisor, in a position having trade, craft, or laboring experience and knowledge as the paramount requirement.").

29.     5 CFR § 532.505(a) provides, *inter alia*, that "Employees shall be entitled to receive night shift differentials in accordance with section 5343 of title 5, United States Code," and 5 CFR § 532.505(d) and (e) further provide that such differential must be paid to employees even though they are assigned to a temporary tour of duty and/or take leave with pay:

**(d) *Temporary tour of duty.***

(1) An employee regularly assigned to a night shift who is temporarily assigned to a day shift or to a night shift having a lower night shift differential shall continue to receive the regular night shift differential, a temporary detail for training purposes is also included - see 5 CFR 410.602.

(2) An employee regularly assigned to a night shift, who is temporarily assigned to another night shift having a higher differential, shall be paid the higher differential if a majority of the employee's regularly scheduled nonovertime hours of work on the temporary shift fall within hours having the higher differential.

(3) An employee regularly assigned to a day shift who is temporarily assigned to a night shift shall be paid a night shift differential.

**(e) *Leave with pay.***

(1) An employee regularly assigned to a night shift shall be paid a night shift differential during a period of leave with pay.

(2) An employee regularly assigned to a day shift who is temporarily assigned to a night shift shall be paid a night shift differential for any leave with pay taken when scheduled to work night shifts.

(3) An employee assigned to a regular rotating schedule involving work on both day and night shifts shall be paid a night shift differential only for any leave with pay taken when scheduled to work night shifts.

(4) An employee who is not regularly assigned to a day shift or a night shift but whose shift is changed at irregular intervals shall be paid a night shift differential during leave with pay if the employee received a night shift differential for the last shift worked preceding leave with pay.

30.    FWSNF S8-4(c), provides, *inter alia*, that:

A prevailing rate employee is entitled to pay at his or her scheduled rate plus a differential of seven and one-half per cent of his or her scheduled rate for regularly scheduled nonovertime work when a majority of his or her work hours occur between 3 p.m. and midnight; or 10 percent of his or her scheduled rate if the majority of his or her work hours occur between 11 p.m. and 8 a.m. The night shift differential is paid for the entire shift when the majority of hours fall within the specified periods. Majority of hours means a number of whole hours greater than one-half (including meal breaks), e.g., 5 hours of a scheduled 8-hour shift. (53 Comptroller General 814).

(1) *Shifts for which night shift differentials are payable.*

  • An authorized night shift differential of seven and one-half percent will be paid for the entire shift when a majority of the employee's regularly scheduled nonovertime hours of work fall between the hours of 3 p.m. and midnight.

  •An authorized night shift differential of ten percent will be paid for the entire shift when a majority of the employee's regularly scheduled nonovertime hours of work fall between the hours of 11 p.m. and 8 a.m.

(2)  *Relation of night shift differential to overtime, holiday, and Sunday premium pay*. Night shift differentials are included in the rates of basic pay for wage employees and are used as a basis for computing overtime pay, Sunday pay, holiday pay, and amounts of deductions for retirement and group life insurance.
                                   ****
(3) *Computation of night pay.*

  •   *Absence on holidays or in travel status.*  An NAF wage employee regularly assigned to a night shift for which the night shift differential is payable, is entitled to the night shift differential for periods of excused absence on a holiday or while in official travel status during the hours of his or her regular night shift or on court leave.

  •   *Temporary assignment to a different tour of duty.*

    (i)  An NAF wage employee regularly assigned to a night shift who is temporarily assigned to another night shift with a higher differential shall receive the higher differential when the majority of the employee's regularly scheduled nonovertime hours of work during the temporary assignment fall within a regularly scheduled shift for which the higher differential is payable.

    (ii) An NAF wage employee regularly assigned to a day shift is entitled to a night shift differential for any period during which he or she is temporarily assigned to work a regular shift for which a night shift differential is otherwise payable.

    (iii) A wage employee regularly assigned to a night shift shall continue to receive his or her regular night shift differential during a temporary assignment to the day shift or to another

night shift with a lower differential.

- *Absence on leave.*  The night shift differential payable during periods of leave with pay depends upon the shift to which the employee is assigned at the time of going on leave and the duration of the assignment.

    o An employee regularly assigned to a night shift on a full-time basis will, during periods of absence with pay, receive the night shift differential.

    o An employee assigned to a regular rotating schedule involving work on both day and night shifts will, during periods of absence with pay, receive pay as follows: (i) Pay at rates payable on the day shift will be paid for that portion of the absence occurring during periods when the employee is scheduled to work the day shift and (ii) Night shift differentials will be payable for the portion of the absence occurring during periods when the employee is scheduled to work night shifts.

    o When an employee who is regularly scheduled to work the day shift is absent with pay during a temporary assignment to shifts for which a night shift differential is payable, he or she will be paid as follows: (i) If the assignment to the night shift is for an indefinite duration and no expiration date is specified for the assignment, an employee going on leave with pay while so assigned will receive the night shift differential during such part of the period of the absence as he or she would have been required to work on a shift for which a night shift differential is payable and (ii) If the assignment to the night shift is of specified duration, an employee going on leave while so assigned will receive the night shift differential only for that portion of the absence which falls within the specified period of assignment to the night shift.  After the expiration of the specified period his or her pay will revert to the day rate.

    o If an employee is changed from the day to the night shift at irregular intervals and it cannot be administratively determined that he or she is assigned basically to either shift, payment during periods of absence with pay will be at the rate for the shift on which he or she was working at the time the absence began.

31.     DoDI 1400.25-V1405, Appendix 2 to Enclosure 3, ¶ 2(d)(3) authorizes the

32.     payment of "shift differential entitlements" contained in FWSNF S8-4(e).

33.     EOP 15-10, at 1-47, 1-57, and 13-88 to 13-92 mandate that shift differential be paid to both prevailing rate employees (including Crafts & Trades or "C&T" associates) and to Pay for Performance or "PFP" associates.  *See* EOP 15-10, at 1-47, 1-57, and 13-88 to 13-92.

**The Government's Failure to Correctly
Calculate and Pay Premium Pay**

34.     For years, the Government has been incorrectly calculating and paying Premium Pay to eligible employees such as Plaintiff. As a result, affected employees have not received the full amount of Premium Pay to which they are entitled under federal statute and/or regulations.

**The Failure to Correctly Calculate and Pay
Holiday Premium Pay**

35.     Holiday Premium Pay is required to be paid to an employee for each hour worked on a holiday shift.  Oftentimes, however, hours worked on a shift can span the course of two calendar days, one of which is a holiday and the other of which is not a holiday.  In such cases, the employee is entitled to be paid Holiday Premium Pay for the entire shift which commences on the holiday, even if the shift spans over the course of two calendar days.  That is because the entire workday commencing on the holiday is treated as the holiday for purposes of pay and leave when the employee has a workday touching two calendar days. *See* Executive Order No. 11582 ("Any employee whose workday covers portions of two calendar days and who would, except for this section, ordinarily be excused from work scheduled for the hours of any calendar day on which a holiday falls, shall instead be excused from work on his entire workday which commences on any such calendar day….In administering the provisions of law relating to pay and leave of absence, the workdays referred to in sections 3, 4, and 5 shall be treated as holidays in lieu of the corresponding calendar holidays…."); EOP 15-10, at 4-131 ("If an associate's

-12-

scheduled workday includes hours that fall on two days, including the holiday, he/she gets the entire shift off, with pay; or if required to work, gets basic pay for all non-overtime hours worked plus Holiday Premium Pay for the non-overtime hours actually worked on the holiday.").

36.     For example, an employee whose shift starts at 8:30 p.m. on a Thursday of a Thanksgiving holiday and who continues to work until 7:00 a.m. the following Friday morning, which is not a holiday, is nonetheless entitled to Holiday Premium for all hours worked in that two-calendar day shift that commenced on the Thanksgiving holiday.

37.     Numerous times throughout the years, however, the Government systematically failed to correctly calculate and pay Holiday Premium Pay to employees, such as Plaintiff, for holiday hours worked on the second day of a two-calendar day shift.  For instance, on November 22, 2018 Plaintiff began his work shift at 8:29 p.m. on the Thanksgiving Day Holiday and continued to work until 5:00 a.m. the following day.  Plaintiff worked 8 hours of the 10-hour holiday shift and should have been paid 8 hours of Holiday Premium Pay since he worked a two-calendar day shift that commenced on a holiday.  Instead, Plaintiff was paid only 3.5 hours of Holiday Premium Pay and 4.5 hours of Regular Pay.

38.     On December 25, 2018, Plaintiff began his work shift at 8:30 p.m. on the Christmas Day Holiday and continued to work until 7:00 a.m. the following day.  He worked all 10 hours of the holiday shift and should have been paid 10 hours of Holiday Premium Pay since he worked a two-calendar day shift that commenced on a holiday.  Instead, he was paid only 3.5 hours of Holiday Premium Pay and 6.5 hours of Regular Pay.

39.     On January 1, 2019, Plaintiff began his work shift at 8:42 p.m. on the New Year's Day Holiday and continued to work until 7:00 a.m. the following day.  He worked 9.8 hours of the holiday shift and should have been paid 9.8 hours of Holiday Premium Pay since he worked a

two-calendar day shift that commenced on a holiday. Instead, he was paid only 3.3 hours of Holiday Premium Pay and 6.5 hours of Regular Pay.

40.    On January 21, 2019, Plaintiff began his work shift at 8:29 p.m. on the Martin Luther King Day Holiday and continued to work until 7:00 a.m. the following day. He worked all 10 hours of the holiday shift and should have been paid 10 hours of Holiday Premium Pay since he worked a two-calendar day shift that commenced on a holiday. Instead, he was paid only 3.5 hours of Holiday Premium Pay and 6.5 hours of Regular Pay.

41.    On December 25, 2019, Plaintiff began his work shift at 8:28 p.m. on the Christmas Day Holiday and continued to work until 7:00 a.m. the following day. He worked all 10 hours of the holiday shift and should have been paid 10 hours of Holiday Premium Pay since he worked a two-calendar day shift that commenced on a holiday. Instead, he was paid only 3.5 hours of Holiday Premium Pay and 6.5 hours of Regular Pay.

**The Failure to Correctly Calculate and Pay
Sunday Premium Pay**

42.    Sunday Premium Pay is required to be paid to an employee for each hour of regularly scheduled Sunday work. Oftentimes, however, the hours worked on a shift can span the course of two calendar days, one of which is a Sunday and the other of which is not a Sunday (i.e., a Saturday or a Monday). In such cases, the employee is entitled to be paid Sunday Premium Pay for the entire shift, even if some of the hours worked fell on a Saturday or a Monday, as long as part of the shift included at least some work on a Sunday. *See* 5 U.S.C. § 5544(a); 5 U.S.C. § 5546; 5 U.S.C. § 6128(c); 5 CFR § 532.509; FWSNF S8-4(e); DoDI 1400.25-V1405, Appendix 2 to Enclosure 3, ¶ 2(d)(5); EOP 15-10, at 13-82, 83-87.

43.    Additionally, if an employee has two separate shifts with Sunday hours on the same Sunday, the employee is entitled to be paid Sunday Premium Pay for both shifts. *See,* EOP

15-10, at 13-84. For example, an employee whose shift starts at 8:30 p.m. on a Sunday and who continues to work until 7:00 a.m. the following Monday morning is entitled to Sunday Premium Pay for all hours worked in that two calendar day shift, part of which included some Sunday hours.  Similarly, an employee whose shift starts at 8:30 p.m. on a Saturday and who continues to work until 7:00 a.m. the following Sunday morning is also entitled to Sunday Premium Pay for all hours worked in that two calendar day shift, part of which included some Sunday hours.

44.     Throughout the years, however, the Government systematically failed to correctly calculate and pay Sunday Premium Pay to employees, such as Plaintiff, for all hours worked in a two-calendar day shift where some of the hours worked included Sunday hours.  Instead, the Government often paid employees, such as Plaintiff, Sunday Premium Pay only for Sunday hours. For instance, on Sunday October 14, 2018 Plaintiff was regularly scheduled to begin his work shift at 8:30 p.m. and continue to work until 7:00 a.m. the following Monday.  He worked all 10 hours of the scheduled shift and should have been paid 10 hours of Sunday Premium Pay since he worked a two-calendar day shift that included at least some Sunday hours.  Instead, he was paid only 6.5 hours of Sunday Premium Pay and 3.5 hours of Regular Pay.

45.     On Saturday October 6, 2018, Plaintiff was regularly scheduled to begin his work shift at 8:30 p.m. and continue to work until 7:00 a.m. the following Sunday.  He worked 9.8 hours of the scheduled shift and should have been paid 9.8 hours of Sunday Pay since he worked a two-calendar day shift where some of the hours worked included Sunday hours. Instead, he was paid only 6.6 hours of Sunday Premium Pay and 3.2 hours of Regular Pay.

46.     On Sunday September 2, 2018, Plaintiff was regularly scheduled to begin his work shift at 8:30 p.m. and continue to work until 7:00 a.m. the following Monday.  He worked 9.9 hours of the scheduled shift and should have been paid 9.9 hours of Sunday Premium Pay

since he worked a two-calendar day shift that included some Sunday hours.  Instead, he was paid

only 3.5 hours of Sunday Premium Pay and 6.5 hours of Regular Pay.

47.     Other times throughout the years, the Government failed to correctly calculate and

pay any Sunday Premium Pay to employees, such as Plaintiff, for any hours worked on a

Sunday.  For instance, on Saturday November 3, 2018, Plaintiff was regularly scheduled to begin

his work shift at 8:30 p.m. and continue to work until 7:00 a.m. the following Sunday.  He

worked all 10 hours of the scheduled shift and should have been paid 10 hours of Sunday Pay

since he worked a two-calendar day shift where some of the hours worked included Sunday

hours. Instead, he was paid zero hours of Sunday Premium Pay and 10 hours of Regular Pay.

48.     On Sunday November 4, 2018, Plaintiff was regularly scheduled to begin his

work shift at 8:30 p.m. and continue to work until 7:00 a.m. the following Monday.  He worked

9.9 hours of the scheduled shift and should have been paid 9.9 hours of Sunday Pay since he

worked a two-calendar day shift where some of the hours worked included Sunday hours.

Instead, he was paid zero hours of Sunday Premium Pay and 9.9 hours of Regular Pay.

49.     On Saturday November 10, 2018, Plaintiff was regularly scheduled to begin his

work shift at 8:30 p.m. and continue to work until 7:00 a.m. the following Sunday.  He worked

all 10 hours of the scheduled shift and should have been paid 10 hours of Sunday Pay since he

worked a two-calendar day shift where some of the hours worked included Sunday hours.

Instead, he was paid zero hours of Sunday Premium Pay and 10 hours of Regular Pay.

50.     On Sunday November 11, 2018, Plaintiff was scheduled to work the the Veteran's

Day Holiday with a shift beginning at 8:30 p.m. and continuing until the next day at 7:00 a.m.

He worked the entire 10-hour shift and should have been paid 10 hours of Sunday Pay and

Holiday Pay (i.e., Sunday/Holiday Combined Pay, which is 125% of the employees' basic rate of

pay; 100% for Holiday Pay and 25% for Sunday Pay).  Instead, he was paid 10 hours of Holiday Premium Pay and zero hours of Sunday Premium Pay, even though the Government's payroll and time management system indicated that Plaintiff was, in fact, entitled to 10 hours of the "Pay Code" labeled as "Holiday Sunday Combine S3" pay.

<u>**The Failure to Correctly Calculate and Pay
Night Shift Differential Premium Pay**</u>

51.     Night Shift Differential Premium Pay is required to be paid to an employee for regularly scheduled nonovertime work where the majority of hours occur during a night shift, i.e., the Second Shift (between 3 p.m. and midnight) or the Third Shift (between 11 p.m. and 8 a.m.). Oftentimes, an employee may be temporarily assigned to a different tour of duty (i.e., a different shift than the employee's regularly scheduled shift) and/or may be absent on leave with pay, on holiday or in travel status.  Federal laws provide special rules for computing Shift Differential Premium Pay for such employees. *See,* 5 CFR § 532.505(b)-(e); FWSNF S8-4(c)(3).

52.     For example, an employee regularly assigned to a night shift who is temporarily assigned to a day shift or to a night shift having a lower night shift differential must continue to be paid his or her regular night shift differential. 5 CFR § 532.505(d)(1); FWSNF S8-4(c)(3)(iii). Similarly, an employee regularly assigned to a night shift, who is temporarily assigned to another night shift having a higher differential, must be paid the higher differential, if a majority of the employee's regularly scheduled nonovertime hours of work on the temporary shift fall within hours having the higher differential.  5 CFR § 532.505(d)(2); FWSNF S8-4(c)(3)(i).  Finally, an employee regularly assigned to a day shift who is temporarily assigned to a night shift must be paid a night shift differential.  5 CFR § 532.505(d)(3); FWSNF S8-4(c)(3)(ii).

53.     Numerous times throughout the years, however, the Government systematically failed to correctly calculate and pay Night Shift Differential Premium Pay to employees, such as

Plaintiff, when they were temporarily assigned to a different tour of duty, i.e., when they were assigned to work a different shift than their regularly scheduled and recurring shift.

54.     For instance, when Plaintiff first began working at AAFES he was regularly scheduled to work Saturdays, Tuesdays, Wednesdays, Thursdays and Fridays, from 2:00 p.m. until 10:30 p.m.  He was regularly assigned to the Second Shift during this time period because more than 50% of his work-shift's regularly scheduled hours fell between 3:00 p.m. and Midnight.  EOP 15-10, at 13-91 ("Second Shift: 3 p.m. to Midnight").

55.     During this period, Plaintiff was sometimes temporarily assigned to work the day shift.  For example, on August 21, 2017, Plaintiff was temporarily assigned to work the day shift and worked from 7:30 a.m. to 4:00 p.m.  He should have been paid 8 hours of Night Shift Differential Premium Pay at the Second Shift rate (Regular Pay 2nd), i.e., his regular night shift differential at the time.  Instead, he was paid 8 hours of Regular Pay 1st.

56.     On October 2, 2017, Plaintiff was temporarily assigned to the day shift and worked from 6:58 a.m. to 9:54 a.m.  He should have been paid 3 hours of Night Shift Differential Premium Pay at the Second Shift rate (Regular Pay 2nd), i.e., his regular night shift differential at the time.  Instead, he was paid 3 hours of Regular Pay 1st.

57.     On October 29, 2017, Plaintiff was temporarily assigned to the day shift and worked from 4:56 a.m. to 11:11 a.m. on Sunday.  He should have been paid 6.1 hours of Night Differential Premium Pay at the Second Shift rate (Sunday Pay 2nd), i.e., his regular night shift differential at the time.  Instead, he was paid 6.1 hours of Sunday Pay 1st.

58.     On November 12, 2017, Plaintiff was temporarily assigned to the day shift and worked from 10:56 a.m. to 4:05 p.m. on Sunday.  He should have been paid 5 hours of Night Shift Differential Premium Pay at the Second Shift rate (Sunday Pay 2nd), i.e., his regular night

shift differential at the time.  Instead, he was paid 5 hours of Sunday Pay 1st.

59.     On November 26, 2017, Plaintiff worked from 1:57 p.m. to 6:01 p.m. on Sunday and should have been paid 4 hours of Night Shift Differential Premium Pay at the Second Shift rate (Sunday Pay 2nd), i.e., his regular night shift differential at the time.  Instead, he was paid 4 hours of Sunday Pay 1st.

60.     On August 16, 2018, Plaintiff worked from 2:00 p.m. to 6:07 p.m. and should have been paid 4.1 hours of Night Shift Differential Premium Pay at the Second Shift rate (Regular Pay 2nd), i.e., his regular night shift differential at the time.  Instead, he was paid 4.1 hours of Regular Pay 1st.

61.     At other times, Plaintiff was temporarily assigned to a night shift having a higher differential (i.e., the Third Shift).  *See* EOP 15-10, at 13-91 ("Third Shift: 11 p.m. to 8 a.m.").  For example, on October 8, 2017 he was temporarily assigned to a night shift having a higher differential (i.e., the Third Shift) and worked from 5:00 a.m. to 9:37 a.m. on a Sunday.  He should have been paid 4.6 hours of Night Shift Differential Premium Pay at the Third Shift rate (Sunday Pay 3rd), i.e., the higher differential.  Instead, he was paid 4.6 hours of Sunday Pay 1st.

62.     Beginning on or about August 25, 2018, Plaintiff was regularly scheduled to work a compressed schedule with 10-hour workdays on Saturdays, Sundays, Mondays and Tuesdays, from 8:30 p.m. until 7:00 a.m.  Thereafter, beginning on or about June 1, 2019, Plaintiff was regularly scheduled to work a compressed schedule with 10-hour workdays on Tuesdays, Wednesdays, Thursdays and Fridays, from 8:30 p.m. until 7:00 a.m.  He was regularly assigned to the Third Shift during these time periods because more than 50% of his work-shift's regularly scheduled hours fell between the hours of 11:00 p.m. and 8:00 a.m.  See EOP 15-10, at 13-91 ("Third Shift: 11 p.m. to 8 a.m.").

63.     During this time, he was sometimes temporarily assigned to a night shift having a lower differential (i.e., the Second Shift).  For example, on September 18, 2019, Plaintiff was temporarily assigned to assigned to a night shift having a lower night shift differential (i.e., the Second Shift) and worked from 8:28 p.m. to 8:58 p.m.  He should have been paid .5 hours of Night Shift Differential Premium Pay at the Third Shift rate (Regular Pay 3rd), i.e., his regular night shift differential at the time.  Instead, he was paid .5 hours of Regular Pay 1st.

64.     On November 9, 2019, Plaintiff was temporarily assigned to a night shift having a lower night shift differential (i.e., the Second Shift) and worked from 8:28 p.m. to 11:30 p.m.  He should have been paid 3 hours of Night Shift Differential Premium Pay at the Third Shift rate (Regular Pay 3rd), i.e., his regular night shift differential at the time.  Instead, he was paid 3 hours of Regular Pay 2nd.

65.     On December 1, 2019, Plaintiff was temporarily assigned to a night shift having a lower night shift differential (i.e., the Second Shift) and worked on Sunday from 8:25 p.m. to 1:33 a.m. the following day.  He should have been paid 5 hours of Night Shift Differential Premium Pay at the Third Shift rate (Sunday Pay 3rd), i.e., his regular night shift differential at the time.  Instead, he was paid 5 hours of Sunday Pay 2nd.

66.     On February 1, 2020, Plaintiff was temporarily assigned to a night shift having a lower night shift differential (i.e., the Second Shift) and worked on Sunday from 8:28 p.m. to 12:41 a.m. the following day.  He should have been paid 4.1 hours of Night Shift Differential Premium Pay at the Third Shift rate (Sunday Pay 3rd), i.e., his regular night shift differential. Instead, he was paid 4.1 hours of Sunday Pay 2nd.

67.     Other times throughout the years, the Government systematically failed to correctly calculate and pay Night Shift Differential Premium Pay to employees, such as Plaintiff,

when they were absent on leave with pay.  For instance, on February 16, 2019, Plaintiff took 10

hours of Annual Leave Pay.  He was regularly assigned to the Third Shift at the time and should

have been paid 10 hours of Night Differential Premium Pay at the Third Shift rate (Annual Leave

3rd), i.e., his regular night shift differential.  Instead, he was paid 10 hours of Annual Leave 1st.

68.     On July 3, 2019, Plaintiff took 10 hours of Sick Leave Pay.  He was regularly

assigned to the Third Shift at the time and should have been paid 10 hours of Shift Differential

Premium Pay at the Third Shift rate (Sick Leave 3rd), i.e., his regular night shift differential.

Instead, he was paid 7.1 hours of Sick Leave 1st and 2.9 hours of Vacation Leave 1st.

69.     On September 19, 2019, Plaintiff took 10 hours of Sick Leave Pay.  He was

regulaly assigned to the Third Shift during this period and should have been paid 10 hours of

Night Shift Differential Premium Pay at the Third Shift rate (Sick Leave 3rd), i.e., his regular

night shift differential.  Instead, he was paid 10 hours of Sick Leave 1st.

70.     On January 7, 2020, Plaintiff took 10 hours of Annual Leave Pay.  He was

regularly assigned to the Third Shift during this period and should have been paid 10 hours of

Night Shift Differential Premium Pay at the Third Shift rate (Annual Leave 3rd), i.e., his regular

night shift differential.  Instead, he was paid 10 hours of Annual Leave 1st.

## CLASS ACTION ALLEGATIONS

71.      Plaintiff brings this action pursuant to Rule 23 of the Rules of the United States

Court of Federal Claims ("RCFC") on behalf of himself and the following Classes:

**The Holiday Pay Class:**

All wage employees of AAFES who, at any time after August 13,
2014: (1) worked one or more shifts that commenced on a holiday
and spanned over the course of two calendar days, one of which was
a holiday and one of which was not a holiday; and (2) did not receive
Holiday Premium Pay for all hours worked on such shift(s).

**The Sunday Pay Class:**

All wage employees of AAFES who, at any time after August 13, 2014:
(1) worked one or more shifts that included work on a Sunday and that
spanned over the course of two calendar days, one of which was a
Sunday and one of which was not a Sunday; and (2) did not receive
Sunday Premium Pay for all of the hours worked on such shift(s).

**The Night Shift Differential Pay Class:**

All wage employees of AAFES who, at any time after August 13, 2014:
(1) were assigned to either (a) a night shift and temporarily assigned to
a day shift or to a night shift having a lower night shift differential; (b)
a night shift and temporarily assigned to another night shift having a
higher differential; and/or (iii) a day shift and temporarily assigned to a
night shift; and/or (2) were absent on leave with pay, on holiday or in
travel status during a period of time when they were regularly or
temporarily assigned to work night shifts; and (3) did not receive Night
Shift Differential Premium Pay for all of the hours worked, or for
which paid leave was taken, with respect to such shift(s).

72.     The Classes consist of thousands of individuals, making joinder impractical, in
satisfaction of RCFC 23(a)(1).  The exact size of the Classes and the identities of the individual
members thereof are ascertainable through Defendant's records.

73.     The claims of Plaintiff are typical of the claims of other members of the Classes.
The claims of the Plaintiff and the Classes are based on the same legal theories and arise from
the same unlawful conduct, resulting in the same injury to the Plaintiff and the Classes.

74.     The Classes have a well-defined community of interest.  Defendant has acted and
failed to act on grounds generally applicable to Plaintiff and the Classes, requiring the Court's
imposition of uniform relief to ensure compatible standards of conduct toward the Classes.

75.     There are many questions of law and fact common to the claims of Plaintiff and
the Classes, and those questions predominate over any questions that may affect individual Class
and Subclass members within the meaning of RCFC 23(a)(2) and 23(b)(2).

76.     Common questions of fact and law affecting members of the Classes include, but

are not limited to, the following:

    a.  Whether Defendant failed to correctly calculate Premium Pay, including Holiday Premium Pay, Sunday Premium Pay, and Night Shift Differential Premium Pay;

    b.  Whether Defendant failed to provide Plaintiff and the Classes all Premium Pay payments to which they were entitled;

    c.  Whether Defendant's conduct in failing to provide Premium Pay to Plaintiff and the Classes violated federal statute and/or regulations mandating the payment of Premium Pay; and

    d.  Whether Plaintiff and the Classes are entitled to relief, including damages, interest, costs and/or attorney's fees.

77.    Absent a class action, most class members would find the cost of litigating their claims to be prohibitive, and will have no effective and complete remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

78.    Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the Classes'.

**COUNT I**
**Failure to Pay Holiday Premium Pay**
**Mandated By Federal Statute and/or Regulations**
***On Behalf of the Holiday Pay Class***

79.    Plaintiff incorporates the foregoing allegations.

80.    By either, or both, federal statute and/or regulations, Plaintiff and members of the Holiday Pay Class were eligible for and entitled to mandatory payment of Holiday Premium Pay.

81.     Plaintiff and members of the Holiday Pay Class worked one or more shifts that commenced on a legal holiday and spanned over the course of two calendar days, one of which was a legal holiday and one of which was not a legal holiday.

82.     Plaintiff and members of the Holiday Pay Class should have received, but did not receive, Holiday Premium Pay for all the hours worked on such holiday shifts.

83.     Defendant violated the aforementioned statute and/or regulations, by failing to pay Plaintiff and the Holiday Pay Class all Holiday Premium Pay to which they were entitled.

84.     As a result, Plaintiff and the Holiday Pay Class have suffered damages.

### COUNT II
### Failure to Pay Sunday Premium Pay
### Mandated By Federal Statute and/or Regulations
### *On Behalf of the Sunday Pay Class*

85.     Plaintiff incorporates the foregoing allegations.

86.     By either, or both, federal statute and/or regulations, Plaintiff and members of the Sunday Pay Class were eligible for and entitled to mandatory payment of Sunday Premium Pay.

87.     Plaintiff and the Sunday Pay Class were wage employees who worked one or more regularly scheduled shifts that included at least some work on a Sunday, even though the shifts spanned over two calendar days, one of which was a Sunday and one of which was not (i.e., a Saturday or Monday), entitling them to Sunday Premium Pay for the entire shift(s).

88.     Plaintiff and members of the Sunday Pay Class should have received, but did not receive, Sunday Premium Pay for all the hours worked on such Sunday shifts.

89.     Defendant violated the aforementioned statute and/or regulations, by failing to pay Plaintiff and the Sunday Pay Class all Sunday Premium Pay to which they were entitled.

90.     As a result, Plaintiff and the Sunday Pay Class have suffered damages.

## COUNT III
### Failure to Pay Night Shift Differential Premium Pay
### Mandated By Federal Statute and/or Regulations
### *On Behalf of the Night Shift Differential Pay Class*

91.     Plaintiff incorporates the foregoing allegations.

92.     By either, or both, federal statute and/or regulations, Plaintiff and members of the Night Shift Differential Pay Class were eligible for and entitled to mandatory payment of Night Shift Differential Premium Pay.

93.     Plaintiff and members of the Night Shift Differential Pay Class were "prevailing rate employee[s]" within the meaning of 5 U.S.C. § 5342(2) and the regulations implemented thereunder and/or Crafts & Trade "C&T" or Pay For Performance "PFP" associates within the meaning of EOP 15-10 or otherwise eligible to receive shift differential by statute/regulations.

94.     Plaintiff and the Night Shift Differential Pay Class worked one or more shifts for which they were (A) regularly assigned to either (i) a night shift and temporarily assigned to a day shift or to a night shift having a lower night shift differential; (ii) a night shift temporarily assigned to another night shift having a higher differential; and/or (iii) a day shift and temporarily assigned to a night shift; and/or (B) absent on leave with pay or on holiday during a period of time when they were regularly or temporarily assigned or scheduled to work night shifts, thereby entitling them to Night Shift Differential Premium Pay for such shift(s).

95.     Plaintiff and the Night Shift Differential Pay Class should have received, but did not receive, Night Shift Differential Premium Pay for all the hours worked on such shifts.

96.     Defendant violated the aforementioned statute and/or regulations, by failing to pay Plaintiff and members of the Night Shift Differential Pay Class all Shift Differential Premium Pay to which they were entitled.

97.     As a result, Plaintiff and members of the Night Shift Differential Pay Class have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for the following relief:

a.      An order certifying the Classes and appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the Classes;

b.      A judgment for and award of damages to Plaintiff and the Classes;

c.      Payment of costs and reasonable attorneys' fees;

d.      For other and further relief as the Court may deem proper.

Dated:  August 13, 2020                 Respectfully submitted,

By:    /s/ John G. Jacobs
John G. Jacobs
Jacobs Kolton, Chtd.
150 North Michigan Avenue, Suite 2800
Chicago, Illinois 60601
Telephone: (312) 427-4000
Facsimile: (312) 268-2425
jgjacobs@jacobskolton.com

*Counsel Of Record For Plaintiff*
Andrew Thomas and The Putative Classes

Of Counsel:

Bryan G. Kolton (pending *pro hac vice*)
Jacobs Kolton, Chtd.
150 North Michigan Avenue, Suite 2800
Chicago, Illinois 60601
Telephone: (312) 427-4000
Facsimile: (312) 268-2425
bgkolton@jacobskolton.com